FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV 13 2009

Stephan Harris, Clerk
Cheyenne

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MAINTENANCE ENTERPRISES, INC., and IMTC, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>DYNO NOBEL, INC.,<br><br>Defendant. | Case No. 08–CV–170–B |

## ORDER ON PLAINTIFFS' MOTION TO COMPEL

The above-entitled matter having come before the Court on Plaintiffs' Motion to Compel [Doc. No. 43], and the Court having carefully considered the motion, opposition, and reply, and being fully advised in the premises, FINDS:

**I.    FACTS**

This case originally comes before the Court on the parties' claims and counterclaims for breach of contract and related matters. The action arises out of a construction contract, under which plaintiffs dismantled, moved, and reinstalled a nitric acid plant and an ammonium nitrate plant from Florida to defendant's Cheyenne facility. Plaintiffs assert that after work began on the project, they experienced delays because of the late receipt of engineering drawings and specifications, as well as missing, incomplete, and inaccurate information. Plaintiffs allege that the foregoing created cost problems, so they agreed to reduce their markup on the contract. In spite of this, defendant gave plaintiffs a letter

disputing certain cost increases. Plaintiffs admit defendant did pay them some requested payments. However, plaintiffs assert that defendant sent them a second letter disputing the charges, stating that it would not pay plaintiffs more than approximately $48 million and would backcharge for any overpayments. Plaintiffs contend defendant still owes them for work listed in three invoices as well as additional work not yet invoiced. Plaintiffs claim defendant breached the contract by failing to compensate them, breached the implied covenant of good faith and fair dealing as defined under Wyoming law, and has been unjustly enriched because it has not paid for services received by plaintiffs. As a result of this dispute, plaintiffs have filed liens on defendant's property. Plaintiffs seek damages for these breaches and ask the Court to order that the lien on defendant's property be foreclosed upon.

Defendant brings counterclaims for breach of contract, breach of covenant of good faith and fair dealing, and declaratory judgment. Defendant states it purchased two closed plants in Florida and contracted with plaintiffs to dismantle, move, and reinstall them at defendant's Cheyenne property. Defendant asserts the contract contained a "time-is-of-the-essence" clause and stated that any delays are attributable to defendant. According to defendants, the contract also outlined the process by which parties could change compensation. Defendant argues that plaintiffs have failed to comply with the various procedures and requirements, as set forth in the contract. Defendant alleges it has lost sales and has been exposed to liabilities as a result of plaintiffs' failure to complete the project in a timely manner. Defendant seeks damages for these breaches. Defendant further seeks a declaration stating that it is not obligated under the contract to pay plaintiffs any amount in excess of approximately $48 million or for any unauthorized and unapproved cost increases.

The parties have engaged in extensive discovery in this lawsuit. As part of this discovery, plaintiffs served defendant a *First Set of Interrogatories* and *First Requests for Production of Documents and Tangible Things*. In response, defendant delivered a privilege log and a redaction log to plaintiffs. Defendant maintains that the documents identified in these logs are being withheld on the basis of attorney-client privilege and attorney work product. Plaintiffs disagree and state that defendant's responses and logs are deficient, citing a number of reasons. Plaintiffs offer that they have attempted to resolve these matters on their own, but to no avail. Therefore, plaintiffs filed the instant Motion to Compel [Doc. No. 43].

II.     **DISCUSSION**

The issues before the Court include: whether certain communications involving two of defendant's independent contractors, Art Graf and Richard Winegar (hereinafter independent contractors), are protected by attorney-client privilege and/or the attorney work product doctrine; whether defendant has provided plaintiffs with a sufficient privilege log; and whether defendant properly redacted the documents listed in its redaction log.

a.      **Privileges**

In their motion [Doc. 43], plaintiffs argue that attorney-client privilege does not extend to third-party independent contractors. Plaintiffs suggest that under Wyoming law, attorney-client privilege only attaches to communications between a client and that client's attorney for the purpose of obtaining legal advise In the alternative, plaintiffs argue that if the privilege were to be extended to encompass independent contractors, the positions held by the independent contractors in this case do not rise to the

level necessary to extend the attorney-client privilege protections. Plaintiffs specifically point to the contractual terms of each independent contractor's respective consulting agreements, which expressly state that neither is an employee nor an agent of defendant.

Defendant filed an opposition [Doc. 46], which argues that both of the independent contractors functioned as the equivalent of its employees and both directly dealt with the subject-matter of this litigation. Defendant further asserts that both of the independent contractors communicated with its principals, served as its representatives at important meeting, and possessed essential knowledge and information that no one else in the company possessed. Defendant contends forty of the ninety-six documents cited in its privilege log and two hundred eighty-two of the four hundred seventy-six cited in its redaction log involve communications with at least one of the independent contractors. Defendant claims that if it were compelled to disclose any of these documents, it would be forfeiting critical information regarding litigation strategy and preparation in the case. Defendant cites *In re Bieter Co.*, 16 F.3d 929 (8th Cir.1994) to support its contention regarding the contractors. Defendant suggests that the sheer number of documents implicated by plaintiffs' motion speaks to the high level of involvement the independent contractors at issue had with the project.

Although it is generally accepted that disclosure of otherwise privileged communications to a third party constitutes waiver of attorney-client privilege and the work product doctrine, the Court finds there exist situations wherein communications remain protected. As an initial matter, the Court must determine whether the attorney-client privilege and/or the work product doctrine extends to communications involving counsel for defendant and the independent contractors.

### i. *Attorney-Client Privilege*

The attorney-client privilege is meant to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *In re: Qwest Communications International, Inc.*, 450 F.3d 1179, 1185 (10th Cir.2006) (*quoting Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "In federal court, the determination of what is privileged depends upon the dictates of Rule 501 of the Federal Rules of Evidence." *ERA Franchise Sys., Inc. v. Northern Ins. Co.*, 183 F.R.D. 276 (D.Kan.1998) (*quoting Fisher v. City of Cincinnati*, 753 F.Supp. 692, 694 (S.D.Ohio 1990)). Under Rule 501, state law governs any privileged matters in a diversity case. *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695 (10th Cir.1998) (citing *Wylie v. Marley Co.*, 891 F.2d 1463, 1471 (10th Cir.1989). *See also* Fed.R.Evid. 501 ("in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supports the rule of decision, the privilege . . . shall be determined in accordance with State law."). The Court has jurisdiction over this matter pursuant to diversity jurisdiction under 28 U.S.C. § 1332. Accordingly, Wyoming law defines the scope of the attorney-client privilege applicable in this case.

Wyoming statute § 1-12-101(a)(i) sets forth the attorney-client privilege. The statute states in relevant part that "[t]he following persons shall not testify in certain respects . . . An attorney . . . concerning a communication made to him by his client . . . in that relation, or his advice to his client . . ." Based on the statute, in Wyoming, the essential elements of the attorney-client privilege are: (1) there is a communication; (2) between a client and an attorney; (3) that is made in that attorney-client relation; and (4) the communication was made in confidence. *See* John M. Burman, *Professional Responsibility in Wyoming* 275 (2008) (hereinafter Burman, *Professional Responsibility*). However, the

Wyoming statute regarding attorney-client privilege leaves certain questions unanswered, such as *who* may be defined as a client under Wyoming law. *Id.* at 281. This question is not able to be answered with any certainty due to a lack of Wyoming Supreme Court opinions on the issue of attorney-client privilege. *Id.* Therefore, where the Wyoming Supreme Court has not directly announced a definitive test on issue, the Court is left with duty to predict how that court would resolve it. *Frontier Refining, Inc.,* 136 F.3d at 700 (citing *Burns v. International Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir.1991). Since Wyoming Supreme Court decisions on this issue are in short supply, the Court must look to "well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Id.*

*Upjohn Co. v. United States* is the current leading case concerning federal common law authority on attorney-client privilege in the corporate setting. 449 U.S. 383 (1981). The *Upjohn* court specifically rejected the rule limiting the privilege to a corporate "control group," and instead held the attorney-client privilege may encompasses communications between a corporation's attorney and any employees or agents of the corporation. *Id.* at 390. Thus, the *UpJohn* court reasoned that the privilege can exist between counsel and middle or lower-level employees if those employees "would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Id.* at 391. This is generally known as the "subject matter test." Burman, *Professional Responsibility* at 286.

Against this backdrop, the issue becomes whether an independent contractor is a third party, nonclient or whether there may be a sufficient relationship between the independent contractor and the

6

entity to justify the application of the attorney-client privilege. The Court finds *In re Bieter Co.*, 16 F.3d 929 (8th Cir.1994) lends compelling guidance on this very issue. The Court finds the parties have not cited, nor has the Court found, any published Tenth Circuit decisions applying *Bieter*. Be that as it may, other district courts in this Circuit have also found *Bieter* to be persuasive authority. *See RODA Drilling Co. v. Siegal*, 2009 WL 166815 (N.D. Okla.2009); *Austin v. City & County of Denver*, 2006 WL 1409543 (D. Colo.2006); *Horton v. U.S.*, 204 F.R.D. 670 (D. Colo.2002); *Western Resources, Inc. v. Union Pacific Railroad Co.*, 2002 WL 181494 (D. Kan.2002).

In *Bieter*, a partnership had been formed in order to develop a parcel of Minnesota farmland. An independent contractor was retained by the Bieter partnership in order to provide advice and guidance regarding the commercial development of the farmland. Bieter and the independent contractor entered into an agreement that expressly stated the independent contractor was not an agent, employee, or partner of Bieter. Nonetheless, the independent contractor maintained a long-term relationship with Bieter, worked in the Bieter's office space, and consulted on commercial and retail development in exchange for a monthly fee, plus expenses. In addition to securing tenants for the development, acting as Bieter's sole representative in meetings with tenants and architects, and otherwise representing the partnership, the independent contractor worked extensively with Bieter's legal counsel on the litigation that resulted from the project. The *Bieter* court found that there was "no principled basis to distinguish [the independent contractor's] role from that of an employee, and his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the partnership's] reasons for seeking representation . . . As we

understand the record, he was in all relevant respects the functional equivalent of an employee." *Bieter*, 16 F.3d at 938. The Eighth Circuit then analyzed the privilege issue as if the independent contractor were any other Bieter employee and ultimately found the attorney-client privilege applied to communications between the independent contractor and Bieter. *Id.*

In this case, for the Court to follow the *Bieter* analysis, it must make a determination as to whether the relationship between defendant and the independent contractors is of the sort that justifies application of the attorney-client privilege. *See id.* at 938. If the Court finds that a meaningful relationship exists, it must then determine whether: "(1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." *Id.* at 936. To apply these factors, the Court must closely examine the entries of defendant's privilege log, as well as the relevant facts found in the record, in order to determine whether protecting the communications furthers the purpose and policy behind the attorney-client privilege.

It is well-settled that a party seeking to invoke the attorney-client privilege bears the burden of establishing the applicability that privilege. *See, e.g. In re Foster*, 188 F.3d 1259, 1264 (10th Cir.1999); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984), cert. denied, 469 U.S. 1199 (1985). "[F]ederal courts narrowly construe all privileges . . ." *Everitt v. Brezzel*, 750 F.Supp. 1063,

1066 (D.Colo.1990); Paul Rice, 1 *Attorney-Client Privilege in the U.S.* § 4:19 (Thomson West 2d ed. Supp.2009) (stating "[b]efore the privilege protection will be extended to a non-employee, . . . the party asserting the privilege must make a detailed factual showing that the non-employee is the functional equivalent of an employee and that the information sought from the non-employee would be subject to the attorney-client privilege if he were an employee of the party."). The party asserting the privilege "must bear the burden as to specific questions or documents. . ." *In re Foster*, 188 F.3d at 1264. The asserting party must also establish all of the elements of the privilege, which includes establishing under Wyoming law that the privilege has not been waived. Burman, *Professional Responsibility* at 291-92.

Based on the foregoing, the Court finds defendant bears the burden of establishing that the documents it claims are protected by the attorney-client privilege are in-fact privileged. This includes carrying the burden to prove no waiver of the privilege has occurred. In applying the *Bieter* analysis, the Court begins by finding the relationship between defendant and the independent contractors justifies application of the privilege. Each independent contractor's duties, as evidenced by the Affidavit of Douglas Chandler [Doc. 46–2] and by defendant's opposition [Doc. 46], makes it clear that there was a significant relationship between the independent contractors and defendant regarding involvement in the expansion project of the ammonium nitrate facility. Mr. Winegar, in his position as project manager: (1) executed project work plans; (2) identified needed resources and assigned responsibilities, (3) managed day-to-day operational aspects of the project and scop; (4) reviewed deliverables from project team; (5) enforced project standards; (6) oversaw quality assurance procedure and standards; (7) managed project budgets and schedules; (8) ensured project documents were complete; and (9) attended

key meetings [*see* Doc. 46–2, Affidavit of Douglas Chandler at 2-3]. In addition to attending key meetings, Mr. Graf's duties included: "(1) identifying needs for project system reports, analyzing those reports, and communicating finding to management; (2) working directly with project engineers to validate estimates and develop projections for the project; (3) reviewing all construction supply contracts, invoices, and change order; (4) monitoring control processes; and (5) establishing lines of communication with all defendant parties and contractors" [*Id.* at 3]. Therefore, the Court finds the first element of the *Bieter* analysis is satisfied.

In spite of this finding, the Court finds defendant has failed to overcome its burden establishing the documents containing communications with the independent contractors found in its privilege log are privileged, as defendant does not make a sufficient showing regarding the other five elements of the *Beiter* analysis. The Court notes that defendant makes the conclusory claim that all the communications at issue were made for the purpose of seeking legal assistance, that the subject matter is within the scope of the litigation, and that they were treated as confidential. However, defendant fails to back up its claims with any additional evidence to prove that *each* of the communications it states are privileged were made for the purpose of securing legal advice or at the direction of defendant in order to secure legal advice. Although the Court would agree that certain communications between the independent contractors and defendant's counsel may be privileged, defendant has failed to make a showing as to whether or not any of the communications it claims to be privileged are in fact privileged. Consequently, the Court is left to speculate as to which communications, if any, may actually be privileged.

As a final note on attorney-client privilege, the Court cautions parties to keep in mind that communications of underlying facts are not privileged communications. The *Upjohn* court expressly stated that underlying facts are not protected:

> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney. *Upjohn*, 449 U.S. at 396 (citing *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (D.C.Pa.1962)).

### ii.  *Work Product Doctrine*

The Court further finds defendant has not amply demonstrated that the work product doctrine applies to any of the documents it claims is privileged attorney work product in its privilege log. The work product doctrine, which is distinct from the attorney-client privilege, protects "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(3). In addition, the work product doctrine protects an attorney's thought processes, opinions, conclusions, and legal theories. *Religious Technology Center v. F.A. C.T.Net, Inc.*, 945 F.Supp. 1470, 1480 (D.Colo.1996). Case law broadly defines "anticipation of litigation." "The threshhold question for assertaion of the work product doctrine, regardless of the type of information sought or who prepared it, is whether the material was 'prepared in anticipation of litigation.'" Burman, *Professional Responsibility* at 311. The party seeking work product protection must establish that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."

11

*Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D.Kan.2000).

The primary purpose of the work product doctrine is to "prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigative and analytical effort, and strategies for developing and presenting the client's case." *United States v. Bagley*, 212 F.R.D. 554, 560 (C.D.Cal.2003) (internal citations omitted). *See also Hickman v. Taylor*, 329 U.S. 495 (1947) (observing that the work product doctrine permits an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference").

Attorney work product may be determined "in light of the nature of the document and the factual situation in the particular case [as long as] the document can be fairly said to have been prepared or obtained because of the prospective of litigation." *State of Maine v. United States Department of Interior*, 298 F.3d 60, 68 (1st Cir.2002). *See also Nesse v. Pittman*, 202 F.R.D. 344, 349 (D.D.C.2001) (holding that the requirements of Rule 26(b)(3) are met whenever materials are prepared in light of a lawyer's subjective and objectively reasonable belief that litigation is a "real possibility").

Furthermore, documents "without any creative or analytic input by an attorney or his agent, doe not qualify as work product." Burman, *Professional Responsibility* at 314. Although the purpose of the privileges is to encourage clients to make full disclosure to their attorneys, this does not mean the privilege protects "communications that prove important to an attorney's legal advice to a client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999) (*citing Fisher v. United States*, 425 U.S. 391, 403 (1976)). "[A] communication between an attorney and a third party does not become shielded by

the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *Id.* "The attorney-client privilege excludes from its scope even confidential communications with a lawyer about business or other non-legal matters." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir.2003). The privilege applies only where legal, not business, advice is sought. *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir.1984). Moreover, any communication with an attorney does not shield a business document with the privilege protections. The privilege "protects only those papers prepared . . . for the purpose of confidential communication to the attorney or by the attorney." *Urban Box Office Network, Inc. v. Interfase Manager, L.P.*, 2006 WL 1004472, at *5 (S.D.N.Y. 2006).

The Court finds defendant has not met its burden of showing the documents it claims to be protected by the work product doctrine in its privilege log were created in *anticipation of litigation*. In fact, defendant has failed to present any evidence regarding attorney work product, other than to make the self-serving statement claiming that it properly withheld certain communications involving the independent contractors because those documents are protected by attorney work product. Neither the Court, nor plaintiffs, have any way of knowing whether the documents were prepared in anticipation of litigation or even whether defendant's counsel had a reasonable belief of litigation was imminent. Additionally, defendant does not state under what circumstances any of the documents were prepared.

b.      **Privilege Log**

"A party who does not produce information because it is privileged may not simply withhold it." Burman, *Professional Responsibility* at 299. A party claiming privilege must submit a privilege log.

The purpose of a privilege log "is to permit the other party and, potentially, a court to evaluate whether the privilege actually applies." Burman, *Professional Responsibility* at 299. The Federal Rules of Civil Procedure require a party to "describe the nature of the documents, communications, or things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). The requirements of a privilege log are specifically laid out in the Local Rules for the District of Wyoming. The Rule states:

> A party asserting a privilege or qualified immunity from the production of a document shall furnish all parties the following information:
> (1) the type of document, e.g. letter or memorandum;
> (2) the general subject matter of the document;
> (3) the date of the document;
> (4) the author, addressee and all other recipients of the document, their titles, positions and specific job-related duties, and the relationship of the author and all recipients to one another;
> (5) the specific objection or privilege asserted and an explanation of how it applies;
> (6) such other information sufficient to identify the document for a *subpoena duces tecum*. U.S.D.C.L.R. 34.1(c).

The Court finds the descriptions of documents in defendant's privilege log are not specific enough to determine which documents are privileged and which are not. The Court finds defendant has failed to meet the standards set forth in both Rule 26(b)(5) and the Local Rules. A privilege log must include sufficient information so that the Court and opposing counsel can assess the applicability of the privilege. *See Watts v. Federal Express Corp.*, 2001 WL 1661474, at *6 (W.D.Mich.2001); *Meridan Diagonostics, Inc. v. Yi.*, 2001 WL 1842463, at *9-10 (S.D.Ohio 2001) (holding that a privilege log is required to assess the applicability of the privilege).

14

The Court finds defendant's privilege log exhibits superficial compliance with the requirements of the Local Rules. The privilege log lacks sufficient substantive detail to enable a meaningful review for the determination of privilege. *See United States v. Construction Prods. Research*, 73 F.3d 464, 473 (2d Cir.1996) (finding that a privilege log must be sufficiently detailed to permit a judgment as to whether the document is at least potentially protected from disclosure, and other required information should be submitted in the form of affidavits or deposition testimony); *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47 (D.Conn.2007) (explaining the burden of proving privilege cannot be met by mere conclusory or *ipse dixit* assertions in unsworn motion papers authored by attorneys).

After careful review of defendant's privilege log and the record, the Court finds the log to be inadequate. Defendant's privilege log utilizes categories listing persons and then identifies various persons within those categories as "Esq.," but the log fails to mention the individual's title, position, and/or specific job-related duties. Moreover, the log completely fails to clarify the relationship of the author(s) to any of the recipients. As a further deficiency, the Court finds that most of defendant's entries are general and vague in nature. The log provides very little information that could aide either the Court or opposing counsel in determining whether or not a privilege applies. For example, defendant's privilege log relates that the communications, mostly emails, were made between attorneys and other people, including the independent contractors. However, the Court is unable to determine from the log whether these communications were confidential communications between an attorney and client made for the purpose of providing legal advice or if they were made in anticipation of litigation.

Under the work product doctrine, the Court is unable to determine if any of the attorneys listed in the log were contacted for the purpose of providing legal assistance related to the litigation or whether they had some other purpose, possibly related to business matters. The Court found some of defendant's entries failed to list any sort of author, sender, or recipient. All of defendant's privileged designations state the document is protected by either "attorney/client privilege" and/or "attorney work product," however, none of the entries provide a specific explanation as to how the asserted protections apply to the documents. Finally, defendant never sets forth when it reasonably anticipated litigation under the work product doctrine. As noted above, it is defendant's burden to establish that a privilege or the work product doctrine exists. The Court finds defendant has failed to provide the Court with enough information to determine whether defendants claims of protection from discovery are appropriate or not. Simply claiming a document to be "attorney work product" or "attorney/client privilege" does not make it so.

The law is well-settled that when a party fails to make the required showing as to why a document is privileged, either by not producing a privilege log or by providing an inadequate one, the Court may deem the privilege waived. *See Employers Reinsurance Corp. v. Calredon Nat'l Ins. Co.*, 213 F.R.D. 422, 428 (D.Kan.2003). On the other hand waiver is not required as a result of the production of a deficient privilege log if defendant did not act in bad faith. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2016.1 (2d ed. 1994 & Supp.2007) ("Unless there has been a bad-faith failure to comply with a reasonable identification effort, automatically finding a waiver of the privilege would be unduly harsh, as some courts have already

recognized . . . draconian penalties should not readily be meted out to those found to have designated with inadequacy specificity unless the court concludes they have acted in bad faith").

Therefore, the Court, being mindful of the importance of privileges, shall allow defendant to rectify the deficiencies in its privilege log and submit a new, more complete supplemental log. Since the Court finds that defendant has not acted in bad faith on this issue, it shall be allowed a short opportunity to amend the log prior to imposing the drastic remedy of waiver. Defendant shall submit the supplemental privilege log on or before November 27, 2009.

c.      **Redaction Log & Relevancy**

The scope of discovery is extremely broad under the Federal Rules of Civil Procedure and is within the discretion of the Court. *See, e.g., Marsee v. U.S. Tobacco Co.*, 866 F.2d 319 (10th Cir.1989). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1). Relevancy, for purposes of Fed.R.Civ.P. 26(b)(1), means *any* information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The party "resisting discovery bears the burden of demonstrating that the requested discovery . . . does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1). . ." *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656-57 (D.Kan.1999). *See also Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D.Kan.2005) (citing *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D.Kan.2004); *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D.Kan.2001)). Relevancy is broadly construed, and a request for discovery should be

considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. Consequently, a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. *Id.*

The Court may enter an order compelling discovery when the opposing party fails to respond to discovery requests. *See* Fed.R.Civ.P. 37(a)(2). If a party claims certain material has been redacted because of privilege, that party seeking the protection must prove that there has not been a waiver. A failure to do so will result in a waiver. *See* Burman, *Professional Responsibility* at 300.

The Court finds defendant has not met its burden. Rather, defendant makes the broad assertion that it has made its own determination as to what is relevant and what is not, but defendant fails to explain how the information withheld is irrelevant to this case. With regard to relevancy, the Court finds that if a party were given the unfettered ability to determine whether the information the requesting party is seeking is relevant or not relevant, that would adversely skew the policy of broad and open discovery in litigation. Certainly, there are documents which will obviously not be relevant in a given matter, but many others will not be so easy to determine, and while that information may not be relevant on its face, it, nonetheless, may lead to the discovery of relevant admissible evidence. As such, the Court finds that due to defendant's failure to provide enough information, it has waived the privilege. Therefore, defendant is ordered to turn all the documents in its redaction log, in their entirety, over to plaintiff on or before November 27, 2009.

### III. CONCLUSION

The Court finds defendant's privilege log is deficient in that it does not meet the minimal

requirement. The Court finds defendant has failed to show whether the communications and documents in their logs were disclosed for the rendition of legal advice or the protection of a legal interest. Defendant has also failed to disclose who each individual is in the privilege log and what their relationship is to each recipient of each document. Defendant has further failed to provide a sufficient description related to each entry in its privilege log so that the Court and opposing counsel will know if it the document was created in anticipation of litigation. Without receiving more substantive information concerning the documents listed in defendant's privilege log, the Court cannot definitely determine whether or not each entry has been properly designated as privilege. As such, allowing defendant a brief opportunity to amend its privilege log to provide additional information concerning the subject matter of each document listed therein, the purpose for each document, a statement of each individual's relationship to the litigation, as well as a description of those individual's relationship to one another, and a more specific explanation of why the document is alleged to be privileged or immune from discovery will allow both plaintiffs and the Court to determine whether each document is indeed subject to a legitimate claim of privilege or whether the privilege objection has been asserted in bad faith. Defendant shall further indicate which documents are responsive to plaintiffs' discovery requests. The supplemental privilege log must include sufficient information for the Court and plaintiffs to determine if a claim of privilege is appropriate or not. Defendant may also submit a brief in support of their assertion of privilege and attorney work product. Of course, if defendant fails to submit an appropriate privilege log, its privilege objections will be deemed waived, and all of the documents in the privilege log will be subject to discovery. After defendants submits their supplemental privilege log

and supplemental brief, as instructed herein, counsel for parties shall meet and confer in an effort to narrow down the number of documents in dispute.

As for the redaction log, since defendant has failed to provide enough information for the Court to determine whether or not the information it has redacted is relevant, the Court deems the privilege waived. Thus the Court grants plaintiffs' motion as it pertains to the redaction log.

NOW, THEREFORE, IT IS ORDERED that Plaintiffs' Motion to Compel be, and the same hereby is, GRANTED IN PART and DENIED IN PART, as set forth in the above Order. It is

FURTHER ORDERED that defendant shall file a supplemental privilege log and brief in support thereof on or before November 27, 2009 and that a failure to produce such a log may result in a waiver of its claims of privilege. It is

FURTHER ORDERED that counsel for the parties shall meet and confer after the filing of the supplemental privilege log and before any additional discovery motion is filed, in a meaningful effort to narrow the number of documents in dispute. It is

FINALLY ORDERED that defendant shall produce the full unredacted documents, listed in its redaction log, to plaintiffs' on or before November 27, 2009.

Dated this 13th day of November, 2009.

WILLIAM C. BEAMAN
UNITED STATES MAGISTRATE JUDGE